SEVEN RESORTS, INC., dba Bridge
Bay Resort, Plaintiff–Appellant,

v.

James Arthur CANTLEN; Delta Upsilon,
an unincorporated fraternal organiza-
tion; Stacey Lynn Epping, Defendants–
Appellees.

No. 93–17196.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 14, 1995.

Decided June 12, 1995.

James D. Boughey and Ginger M. English,
Boughey, Garvie & Bushner, San Francisco,
CA, for the plaintiff-appellant.

Larry L. Hill and J. Michael Favor, Barr,
Sinclair, & Hill, Redding, CA, for defendant-
appellee James Arthur Cantlen.

G. Michael German, Law Offices of G.
Michael German, San Francisco, CA, for the
defendant-appellee Stacey Lynn Epping.

Before: FLOYD R. GIBSON,* HUG, and
GOODWIN, Circuit Judges.

FLOYD R. GIBSON, Senior Circuit
Judge.

Appellant Seven Resorts, Inc., a Nevada
corporation, appeals the district court's dis-
missal for lack of subject matter jurisdiction
of its petition in admiralty for indemnification
pursuant to a rental contract and limitation
of liability under 46 U.S.C. § 183 (1988). We
have jurisdiction over this appeal pursuant to
28 U.S.C. § 1291 (1988), and we affirm.

---

* The HONORABLE FLOYD R. GIBSON, Senior
Judge for the Eighth Circuit Court of Appeals,
sitting by designation.

## I. FACTS

On May 7, 1992, Appellee James Cantlen, a member of the Delta Upsilon fraternity, rented a houseboat on Lake Shasta from Appellant Seven Resorts. Cantlen signed a rental contract whereby he agreed to be responsible for the safe operation of the houseboat and to hold Seven Resorts harmless from any liability arising out of his rental of the boat. Later that afternoon on Lake Shasta, Cantlen attempted to back the boat up while its engines were running. Unfortunately, Appellee Stacey Epping was swimming behind the boat. As the boat reversed, the propeller blades struck Epping, causing her serious injury.

On January 13, 1993, Epping filed suit in Shasta County Superior Court against Seven Resorts and James Cantlen, among others. On August 2, 1993, Seven Resorts filed an amended complaint in admiralty in the United States District Court for the Eastern District of California, seeking indemnification under the rental contract or a limitation of liability under the Limitation of Liability Act, 46 U.S.C. § 183.[1] The district court dismissed the complaint for lack of subject matter jurisdiction. The district court explained that it lacked admiralty jurisdiction over the incident because it occurred on nonnavigable waters, and that it lacked jurisdiction under the Limitation of Liability Act because jurisdiction under that statute is coextensive with that of admiralty jurisdiction. Seven Resorts appeals, claiming jurisdiction under the Limitation of Liability Act, admiralty jurisdiction, or diversity of citizenship.

## II. DISCUSSION

### A. Jurisdiction Under the Limited Liability Act

■ The Limitation of Liability Act, 46 U.S.C. § 183, ("the Act") provides a procedure in admiralty whereby vessel owners can limit their liability for maritime damages to the value of the vessel. Seven Resorts claims that the Act independently confers jurisdiction over its claim. The Supreme Court has expressly left this question unanswered, *Sisson v. Ruby*, 497 U.S. 358, 359 n. 1, 110 S.Ct. 2892, 2894 n. 1, 111 L.Ed.2d 292 (1990), but all five federal appellate courts that have addressed this issue have rejected Seven Resorts' argument. *See David Wright Charter Service v. Wright*, 925 F.2d 783, 785 (4th Cir.1991); *Guillory v. Outboard Motor Corp.*, 956 F.2d 114, 115 (5th Cir.1992); *Complaint of Sisson*, 867 F.2d 341, 350 (7th Cir. 1989), *rev'd on other grounds*, 497 U.S. 358, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990); *Three Buoys Houseboat Vacations U.S.A. Ltd. v. Morts*, 921 F.2d 775, 780 (8th Cir. 1990), *cert. denied*, 502 U.S. 898, 112 S.Ct. 272, 116 L.Ed.2d 224 (1991); *Lewis Charters, Inc. v. Huckins Yacht Corp.*, 871 F.2d 1046, 1052–54 (11th Cir.1989). The Ninth Circuit has not yet addressed this question. We review the district court's dismissal for lack of subject matter jurisdiction *de novo*. *Kruso v. Int'l Tel. & Tel. Corp.*, 872 F.2d 1416, 1421 (9th Cir.1989), *cert. denied*, 496 U.S. 937, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990).

Seven Resorts bases its claim on *Richardson v. Harmon*, 222 U.S. 96, 32 S.Ct. 27, 56 L.Ed. 110 (1911), in which the Supreme Court interpreted an amendment to the Act to confer jurisdiction beyond the reach of admiralty jurisdiction as it stood at that time. In that case, the Court allowed the owner of a commercial steam barge which had collided with a bridge to limit his liability under the Act. *Id.* at 106, 32 S.Ct. at 30. The Court recognized that, prior to the enactment of § 18 of the Shipping Act of 1884 (now § 189 of the Act),[2] damage to a land-based object

---

1. 46 U.S.C. § 183:

   The liability of the owner of any vessel, whether American or foreign, for any embezzlement, loss, or destruction by any person of any property, goods, or merchandise shipped or put on board of such vessel, or for any loss, damage, or injury by collision ... done, occasioned, or incurred, without the privity or knowledge of such owner or owners, shall not ... exceed the amount or value of the interest of such owner in such vessel, and her freight then pending.

2. 46 U.S.C. § 189:

   The individual liability of a shipowner shall be limited to the proportion of any or all debts and liabilities that his individual share of the vessel bears to the whole; and the aggregate liabilities of all the owners of a vessel on account of the same shall not exceed the value of such vessels and freight pending.

such as a bridge was "a nonmaritime tort and as such not within the cognizance of an admiralty court." *Richardson*, 222 U.S. at 101, 32 S.Ct. at 28. Nevertheless, the Court expanded the jurisdictional reach of the Act beyond the then-existing parameters of admiralty jurisdiction in order to effect the amendment's goal of improving the competitive posture of American shipping. *Id.* at 101–102, 32 S.Ct. at 28–29. Congress has since subsumed *Richardson*'s expansion of the Act within the greater aegis of admiralty jurisdiction by passing the Extension of Admiralty Jurisdiction Act, 46 U.S.C. § 740, which extended admiralty jurisdiction to encompass "all cases of damage or injury, to person or property, caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land." *Richardson* undeniably holds that the Act is capable of conferring independent jurisdiction beyond admiralty jurisdiction. Now that the reach of the Act and admiralty jurisdiction are once more coextensive, we must now determine whether jurisdiction of the Act should once again be expanded beyond admiralty jurisdiction.

We see no reason to extend the scope of the Act beyond the parameters of modern admiralty jurisdiction. Congress' passage of the Extension of Admiralty Jurisdiction Act has clearly obviated the rationale behind *Richardson*'s expansion of the Act. Further extension of the Act to encompass torts occurring on non-navigable waterways with no relation to commercial shipping would do little to further the Act's purpose of making United States shipping more competitive world-wide through the limitation of shipping liability. *See Sisson*, 867 F.2d at 350. In addition, further expansion of the Act would ill-serve the need for uniformity in maritime law. *See e.g., Sisson v. Ruby*, 497 U.S. 358, 367, 110 S.Ct. 2892, 2898, 111 L.Ed.2d 292 (1990).

We also believe that expansion of the Act's jurisdiction beyond the current scope of admiralty jurisdiction would unnecessarily undercut the Supreme Court's post-*Richardson* cases delineating the reach of maritime jurisdiction. Under this line of cases, "the party seeking to invoke maritime jurisdiction must show a substantial relationship between the activity giving rise to the incident and traditional maritime activity." *Sisson*, 497 U.S. at 364, 110 S.Ct. at 2897. *See also Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 674, 102 S.Ct. 2654, 2658, 73 L.Ed.2d 300 (1982); *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 268, 93 S.Ct. 493, 504, 34 L.Ed.2d 454 (1972). We can see little point in limiting maritime jurisdiction on the one hand to incidents substantially related to traditional maritime activities, while freely conferring such jurisdiction on the other hand to incidents utterly unrelated to traditional maritime activities merely because a party wishes to limit his liability under the Act. As such, we view *Richardson* as a historical anomaly that cannot be fairly reconciled with modern admiralty jurisdiction, and conclude that the jurisdiction conferred by the Act remains coextensive with that of modern admiralty and maritime jurisdiction.

Seven Resorts alternatively argues that the Act creates federal question jurisdiction independent of admiralty jurisdiction as "arising under federal law." We disagree. An action arises under federal law for purposes of federal question jurisdiction if that law creates the cause of action, *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916), or if a substantial question of federal law is a necessary element of the plaintiff's cause of action, *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 199–202, 41 S.Ct. 243, 245–246, 65 L.Ed. 577 (1921). Under the "well-pleaded complaint" rule, however, the federal question must appear on the face of the plaintiff's well-pleaded complaint in order to create federal question jurisdiction. *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9–10, 103 S.Ct. 2841, 2846–2847, 77 L.Ed.2d 420 (1983). "A defense that raises a federal question is inadequate to confer federal jurisdiction." *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 808, 106 S.Ct. 3229, 3232, 92 L.Ed.2d 650 (1986). In this case, Seven Resorts' assertion of the Act is clearly in the nature of a defense and, as such, cannot create federal question jurisdiction. *Three Buoys*, 921 F.2d at 779–80.

## B. Admiralty Jurisdiction

 Under 28 U.S.C. § 1333, the district courts have jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction." Seven Resorts does not challenge the district court's finding that Lake Shasta is not a navigable waterway for purposes of admiralty jurisdiction.[3] Instead it argues that the district court had jurisdiction over the charter contract regardless of whether Lake Shasta is a navigable waterway because charter contracts are by definition maritime contracts.

Admiralty jurisdiction over maritime contracts, however, is merely a subset of admiralty jurisdiction as a whole. The "primary focus of admiralty jurisdiction is unquestionably the protection of maritime commerce." *Foremost,* 457 U.S. at 674, 102 S.Ct. at 2658. "Commerce for the purpose of admiralty jurisdiction means activities related to the business of shipping." *Adams v. Montana Power Co.,* 528 F.2d 437, 439 (9th Cir.1975). As such, admiralty jurisdiction over both tort and contract issues requires a connection to navigable waters. *Kossick v. United Fruit Co.,* 365 U.S. 731, 736, 81 S.Ct. 886, 890, 6 L.Ed.2d 56 (1961) ("The only question is whether the transaction relates to ships and vessels, masters and mariners, as the agents of commerce . . . ." (quoting I Benedict, Admiralty, 131)); *People's Ferry Co. of Boston v. Beers,* 61 U.S. 393, 401, 15 L.Ed. 961 (1857) ("The admiralty jurisdiction, in cases of contract, depends primarily upon the nature of the contract, and is limited to contracts, claims, and services, purely maritime, and touching rights and duties appertaining to commerce and navigation."); *Adams,* 528 F.2d at 439 ("admiralty jurisdiction need and should extend only to those waters traversed or susceptible of being traversed by commer-

cial craft"). Consequently, the district court properly determined that it lacked admiralty jurisdiction over claims arising from incidents occurring on a nonnavigable waterway such as Lake Shasta.

## C. Diversity Jurisdiction

Seven Resorts claims that the district court had diversity jurisdiction over its claim.[4] We disagree. The federal diversity statute, 28 U.S.C. § 1332, requires both diversity of citizenship and an amount in controversy in excess of $50,000.00. Seven Resorts' complaint alleges neither. The complaint merely alleges that Seven Resorts is a Nevada corporation and that defendant James Cantlen is a resident of Oregon. It is black letter law that, for purposes of diversity, "[r]esidence and citizenship are not the same thing." *Mantin v. Broadcast Music, Inc.,* 244 F.2d 204, 206 (9th Cir.1957). In addition, the complaint does not even attempt to allege an amount over $50,000.00 in controversy. Consequently, we conclude that Seven Resorts' complaint fails to plead diversity jurisdiction.

## III. CONCLUSION

For the above reasons, we AFFIRM the order of the district court.[5]

---

3. In its reply brief, Seven Resorts concedes the nonnavigability of Lake Shasta.

4. The district court concluded that Seven Resorts failed to plead diversity in its complaint. Fed. R.Civ.P. 8(a) requires "a short and plain statement of the grounds upon which the court's jurisdiction depends . . . ." Rule 204 of the Local Rules of the United States District Court for the Eastern District of California additionally requires that the complaint "shall state the claimed statutory or other basis of federal jurisdiction

and shall also state the facts supporting such claim . . . ." Seven Resorts claims that it properly invoked diversity jurisdiction nonetheless by alleging facts giving rise to such jurisdiction in its complaint. Because we conclude that Seven Resorts' complaint failed to allege such necessary predicate facts, we need not reach this issue.

5. Because we do not find this appeal frivolous or dilatory, we deny the Appellees' request for attorneys' fees and double costs pursuant to Fed. R.App.P. 38 and 28 U.S.C. § 1912.