80 F.3d 379
 50 Soc.Sec.Rep.Ser. 417, Medicare & Medicaid Guide
P 44,119,
96 Cal. Daily Op. Serv. 2328,
96 Daily Journal D.A.R. 3921
SKAGIT COUNTY PUBLIC HOSPITAL DISTRICT NO. 2, d/b/a Island
Hospital, Plaintiff-Appellant,
v.
Donna E. SHALALA, Secretary of Health and Human Services;
United States Health and Human Services; Medicare
Geographic Classification Review Board;
et al., Defendants-Appellees.
 No. 95-35385.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 6, 1996.
Decided April 5, 1996.
 
 Sanford E. Pitler, James M. Beaulaurier, Bennett & Bigelow, Seattle, Washington, for plaintiff-appellant.
 Jeffrey A. Clair, United States Department of Justice, Washington, D.C., for defendants-appellees.
 Appeal from the United States District Court for the Western District of Washington, Carolyn R. Dimmick, District Judge, Presiding, D.C. No. CV-93-01781-CRD.
 Before: WRIGHT, HALL and TROTT, Circuit Judges.
 TROTT, Circuit Judge:
 
 OVERVIEW
 
 1
 Skagit County Public Hospital d/b/a Island Hospital (Island) appeals the district court's dismissal of its action challenging the Health Care Finance Administration's (HCFA's) procedure for correcting wage data which, in turn, resulted in a denial of Island's application for geographical reclassification. The district court found that it lacked subject matter jurisdiction because a Medicare statute expressly precludes judicial review of the Secretary of the Department of Health and Human Services' reclassification decisions. The district court remanded part of the action to the Provider Reimbursement Review Board to examine its jurisdiction over a potential wage index claim, which was distinct from the reclassification claim. We vacate the remand order and affirm the district court's dismissal of Island's claim challenging the wage correction process for lack of subject matter jurisdiction.
 
 MEDICARE BACKGROUND INFORMATION
 
 2
 Medicare provides health insurance for the elderly and disabled. Under the Medicare Prospective Payment System, hospitals are reimbursed for inpatient operating costs primarily on the basis of diagnostic related groups. For each diagnostic related group assigned to a discharged Medicare patient, Medicare pays the hospital a prospectively determined amount. The diagnostic related group payment under this Prospective Payment System is determined by the standardized rate and the wage index, both of which are based on the hospital's geographic location. This case involves the determination of the wage index.
 
 
 3
 The wage index measures the ratio of the average hourly wage (AHW) of hospitals in a given geographic area with the nationally calculated AHW. 42 U.S.C. § 1395ww(d)(3)(E). Each hospital is assigned to a particular geographic area, and an area wage rate is computed for all participating hospitals in that area. The wage index is used to adjust Prospective Payment System rates to reflect local variations in labor costs.
 
 
 4
 Geographic areas are classified according to whether they are located in a rural or urban county. An urban county is considered part of a metropolitan statistical area, and its area wage rate is computed on the basis of only the AHWs for hospitals located in that metropolitan area. In rural counties, on the other hand, Medicare computes the area wage rate on the basis of all AHWs for all rural county hospitals in the state. Therefore, the wage index is generally greater for a hospital located in an urban county.
 
 
 5
 In 1989, Congress recognized that the classification system resulted in inequitable hospital reimbursements in cases where a rural hospital is located on the edge of an urban metropolitan area and competes for employees with the urban hospitals. As a result, Congress directed the Department of Health and Human Services (DHHS) to establish a reclassification system whereby a rural hospital could be reclassified to a nearby urban area and receive reimbursements based on the higher area wage rate. 42 U.S.C. § 1395ww(d)(10). Congress established the Medicare Geographic Classification Review Board (MGCRB or Classification Board) to adjudicate hospital requests for reclassification. HCFA required the Classification Board to base its decisions for reclassification requests effective for the years 1992-1994 on 1988 hospital wage data.
 
 
 6
 In September 1992, the DHHS adopted revised reclassification guidelines effective for reclassification requests for the fiscal year 1994. 57 Fed.Reg. 39,746 (Sept. 1, 1992). The revised guidelines imposed a new criterion for reclassification called the "108 percent" threshold test. 42 C.F.R. § 412.230(e)(1)(iii). That test requires a hospital seeking reclassification to show that its actual average hourly wage (based on 1988 data) is at least 108 percent of the average hourly wage of the hospitals in its own geographic area.
 
 
 7
 HCFA allows hospitals to invoke the wage data corrections process in making their applications for reclassification to the Classification Board.[1] Once HCFA completes its review of the hospital's wage data correction request, it transmits the data (corrected or uncorrected) to the Classification Board for use in its review of the hospital's reclassification application. The Classification Board is required to make its determination as to a hospital's application for geographic reclassification within 180 days of the hospital's application, which must be submitted by October 1 of the year prior to the fiscal year for which reclassification is sought. 42 U.S.C. § 1395(d)(10)(C)(iii)(I).
 
 
 8
 The Classification Board has until the end of March to make its determination on reclassification applications, and the Secretary has until the end of June to review those determinations. 42 U.S.C. § 1395ww(d)(10)(C)(iii). A hospital can appeal the reclassification decision of the Classification Board to the Secretary. The Secretary's decision upon review is final and is not subject to judicial review. 42 U.S.C. § 1395ww(10)(C)(iii)(II). These strict time frames enable HCFA to meet the statutory requirement that Prospective Payment System rates, and the methodology and data used to compute the rates, are published by September 1 of each year. 42 U.S.C. § 1395ww(d)(6). The Prospective Payment System rates for hospitals in individual areas are based on the area wage index, which in turn is based on the hospital's geographic classification. HCFA cannot compute the Prospective Payment System rates until all reclassification decisions are finalized. When HCFA incorporates the effects of reclassification decisions into its computation of the Prospective Payment System rates, the impact must be budget neutral. 42 U.S.C. § 1395ww(d)(8)(D).
 
 
 9
 As explained above, the wage index in a specific locality affects the amount of Medicare reimbursements. A hospital may appeal a final determination as to the amount of payment due to a hospital under the Prospective Payment System to the Provider Reimbursement Review Board (PRRB or Reimbursement Board). 42 U.S.C. § 1395oo(a). To qualify for review by the Reimbursement Board, the amount in controversy must be at least $10,000. 42 U.S.C. § 1395oo(a)(2). If the hospital is dissatisfied with the Reimbursement Board's decision, it can seek judicial review of that administrative decision. 42 U.S.C. § 1395oo(f)(1).
 
 FACTS
 
 10
 Island is a rural hospital located 80 miles north of Seattle in Anacortes, Washington. Island was geographically reclassified from "Rural Washington" to the Seattle Metropolitan Statistical Area for fiscal years 1992 and 1993 based on its 1988 wage data. However, when the DHHS revised its classification guidelines for fiscal year 1994, Island no longer qualified for reclassification to the urban area. Based on its original, uncorrected 1988 wage data, Island's average hourly wage was 107.66 percent of the average hourly wages of hospitals in its area, falling just short of the 108 percent criterion for reclassification for fiscal year 1994.
 
 
 11
 As a result, Island attempted to correct its 1988 wage data through the wage correction process. Island submitted a request to Blue Cross, its fiscal intermediary, to change the 1988 wage data to include a sum of $72,000 of employee "fringe benefits and deferred compensation," which was not included in the 1988 wage survey. Island's documentation referred to these labeled expenses as: "labor negotiation legal fees," "dues and educational programs," "salary administration-consulting fees," "employee educational materials-library," "recruiting fees-nursing," and "employee travel, seminars, and association meetings." The inclusion of the additional $72,000 would have raised Island's average hourly wage from $14.5413 (107.66 %) to $14.7666 (109.57 %), thus warranting reclassification to Seattle's metropolitan wage index.
 
 
 12
 Blue Cross did not seek clarification or additional information from Island regarding the correction request, but instead submitted the request directly to HCFA. On December 11, 1992, HCFA concluded that most of Island's claimed additional expenses did not qualify as "fringe benefits or deferred compensation." It determined that only the $9,000 claimed for the nursing recruiting fees could actually be included as a fringe benefit expense. HCFA did not give Island notice or an opportunity to comment on the decision not to add many of the requested corrections to the 1988 wage data survey. Instead, HCFA supplied the wage index data, with the minor $9,000 revision, directly to the Classification Board.
 
 
 13
 Based on the corrected data supplied by HCFA, the Classification Board computed Island's average hourly wage as being 107.8871 percent of the average hourly wage of the hospitals in its area. On January 12, 1993, the Classification Board denied Island's application for reclassification because it failed to meet the 108 percent test. Reclassification for fiscal year 1994 would have qualified Island for more than $600,000 in additional Medicare reimbursements.
 
 
 14
 On January 25, 1993, Island sought final agency review from the HCFA Administrator. The Administrator denied Island's request for reversal of the reclassification decision, stating that HCFA was not authorized to reverse the Classification Board's decision. After receiving the Administrator's decision, Island contacted HCFA's Office of Payment Policy. At that time, Island learned that the HCFA staff had not allowed most of Island's requested corrections to the 1988 wage data survey because they did not fit into the categories of allowable fringe benefit expenses listed on HCFA's "Fringe Benefit List."
 
 
 15
 After reviewing the list of allowable fringe benefits, Island submitted a request for reconsideration to the HCFA staff and documented items that it claimed should have been allowed. Although HCFA did not have a formal procedure for requesting "reconsideration" of the wage correction determinations, in June 1993, an agency official reviewed the request for reconsideration and explained that the claimed additional expenses were not allowable fringe benefits because the expenditures primarily benefitted the hospital, not the hospital's employees.
 
 
 16
 Apparently as a last resort, Island requested a hearing before the Reimbursement Board. In its request to the Reimbursement Board, Island stated that it was appealing the "Secretary's determination of allowable fringe benefit costs" and the Secretary's compliance with the data correction procedures. Later, Island requested that the Reimbursement Board certify the matter for immediate judicial review because it involved a question of law that the Reimbursement Board could not resolve. The Reimbursement Board declined to certify the case for expedited judicial review. Instead, it dismissed the administrative appeal, stating that the appeal challenged the Classification Board's reclassification decision and that the Reimbursement Board had no jurisdiction.
 
 PRIOR JUDICIAL PROCEEDINGS
 
 17
 On December 20, 1993, Island filed a complaint for declaratory and injunctive relief in district court. The complaint sought: 1) a judgment that the Secretary had erred in disallowing the claimed fringe benefit costs as wage-related costs; 2) a judgment declaring that the Secretary violated the APA by basing her decision on an improperly promulgated, substantive rule; 3) a judgment vacating the Classification Board's decision and directing it to grant Island's request for reclassification to the Seattle urban area; and 4) an order directing the Secretary to reimburse Island on the basis of the Seattle urban wage index.
 
 
 18
 The district court dismissed most of Island's claims for lack of subject matter jurisdiction. The district court explained that judicial review of the Classification Board's decisions is expressly foreclosed and that Island's complaint and request for relief would require the court to overturn the Classification Board's decision. Accordingly, on March 6, 1995, the district court dismissed Island's claims that related to the reclassification decision.
 
 
 19
 However, in addition to its motion for summary judgment, the Secretary moved for remand to the Reimbursement Board, stating that the Reimbursement Board might have jurisdiction over one aspect of the complaint. The Secretary stated that the Reimbursement Board misconstrued the issues raised before it as only requesting review of the reclassification decision. The Secretary explained that Island's request could also be interpreted as challenging HCFA's determination of the wage index for Island's locality, and that insofar as HCFA's data corrections determinations relate to a wage index claim, HCFA's determinations are reviewable. Thus, the Secretary argued that the district court should remand to the Reimbursement Board so the Reimbursement Board could reexamine its jurisdiction over the data corrections issue.
 
 
 20
 The district court agreed that a limited remand was appropriate, and stated, "the Secretary's motion for summary judgment is granted [except] to the extent that this cause of action is remanded for possible review by the PRRB if the hospital chooses to pursue this avenue."[2] Island did not pursue the remand to the Reimbursement Board. Instead, on April 14, 1995, Island filed this appeal.
 
 DISCUSSION
 
 21
 * Appellate Jurisdiction
 
 
 22
 The threshold issue involves the appealability of the district court's unusual remand order. The Secretary argues that this court does not have jurisdiction because the district court's order was not a final judgment and the wage index claim is still outstanding. Island counterargues that the remand order was invalid because 1) Island never requested a remand to the Reimbursement Board; and 2) the Secretary, who was not a party before the Reimbursement Board, had no standing to seek a remand to the Reimbursement Board. Island emphasizes that it has not, and will not, "pursue the avenue" left open by the district court.
 
 
 23
 In determining whether the district court's remand order is final and appealable, this court will give 28 U.S.C. § 1291 "a practical construction." Kaho v. Ilchert, 765 F.2d 877, 880 (9th Cir.1985). Island's complaint before the district court clearly focussed on the wage data correction process insofar as it related to Island's application for reclassification for fiscal year 1994. Specifically, the complaint sought: 1) a judgment that the Secretary had erred in disallowing the claimed fringe benefit costs as wage-related costs; 2) a judgment declaring that the Secretary violated the APA by basing her decision on an improperly promulgated, substantive rule; 3) a judgment vacating the Classification Board's decision and directing it to grant Island's request for reclassification to the Seattle urban area; and 4) an order directing the Secretary to reimburse Island on the basis of the Seattle urban wage index. The complaint did not assert any other wage index claims or seek damages therefrom.
 
 
 24
 Furthermore, Island argues that the door to the Reimbursement Board was closed because Island's claim did not meet the $10,000 requirement for that board's jurisdiction. The Secretary does not dispute that Island's claim before the Reimbursement Board probably would not meet the jurisdictional requirements for review. Thus, the Secretary is essentially promoting a meaningless remand to the Reimbursement Board and inviting Island to a party with no cake.
 
 
 25
 Therefore, we vacate the part of the district court's order that remanded "for possible review by the PRRB if the hospital chooses to pursue this avenue." Island never sought the type of relief that the Reimbursement Board renders, and it does not choose to "pursue the avenue" left open by the District Court Order. Accordingly, as a practical matter, this court shall consider the district court's order final and shall exercise appellate jurisdiction.
 
 II
 Subject Matter Jurisdiction
 
 26
 The district court's determination that it lacks subject matter jurisdiction is a question of law reviewed de novo. Seven Resorts, Inc. v. Cantlen, 57 F.3d 771, 772 (9th Cir.1995). A strong presumption favors judicial review of administrative action, and such review will not be cut off unless there is "clear and convincing evidence" that such was the purpose of Congress. Bowen v. Michigan Academy of Family Physicians, 476 U.S. 667, 670-71, 106 S.Ct. 2133, 2135-36, 90 L.Ed.2d 623 (1986). Here, we find precisely such clear congressional intent to preclude judicial review.
 
 
 27
 The Medicare geographic reclassification statute expressly bars all judicial review of final administrative decisions on a hospital's request for geographic reclassification. The statute allows a hospital to appeal a decision of the Classification Board to the Secretary, and then states:
 
 
 28
 The decision of the Secretary shall be final and shall not be subject to judicial review.
 
 
 29
 42 U.S.C. § 1395ww(d)(10)(C)(iii)(II).
 
 
 30
 The Medicare statutory scheme requires such restrictions on judicial review. The payment rates for hospitals in individual areas are based on the area wage index, which in turn is based on the hospital's geographic classification. HCFA cannot compute the payment rates until all reclassification decisions are finalized. The impact of the classifications decisions and the ensuing payment rate must be "budget neutral." 42 U.S.C. § 1395ww(d)(8)(D). The preclusion of judicial review makes the reclassification decisions final, and not subject to later modification by courts, thus allowing the Secretary to determine payment rates and ensure budget neutrality.
 
 
 31
 Island admits that reclassification decisions are not subject to judicial review, but attempts to characterize its action as one challenging a process, not the final reclassification decision. Specifically, Island claims that it is challenging HCFA's "collateral" decision disallowing most of the claimed fringe benefits corrections to Island's 1988 wage data survey and the "methods" by which the reclassification decision was reached. Island relies on the Supreme Court's distinction between a challenge to a "determination" that is statutorily unreviewable and a challenge to the procedures utilized in reaching that determination, which are reviewable. See Bowen, 476 U.S. 667, 106 S.Ct. 2133, 90 L.Ed.2d 623; McNary v. Haitian Refugee Center, Inc., 498 U.S. 479, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991).
 
 
 32
 In Bowen, the Supreme Court addressed judicial review of Medicare regulations related to physician payments. In that case, physicians challenged the validity of a regulation authorizing the payment of different amounts for similar physicians' services. The district court found, and the court of appeals agreed, that the regulation was inconsistent with the plain language of the Medicare statute. In the petition before the Supreme Court, the Secretary asserted that "Congress has forbidden judicial review of all questions affecting the amount of benefits payable under Part B of the Medicare program." Id. at 669, 106 S.Ct. at 2135. The Court disagreed and affirmed the court of appeals, holding that while the Medicare statute precluded judicial review of individual determinations of benefit amounts, challenges to the Secretary's instructions and regulations were not insulated from judicial review. Id. at 678, 106 S.Ct. at 2140.
 
 
 33
 In McNary, the Haitian Refugee Center filed a class action alleging that the application review process in a Special Agricultural Workers' (SAW) amnesty program was conducted in an arbitrary manner that violated the applicants' statutory and due process rights. 498 U.S. at 487, 111 S.Ct. at 893-94. The district court accepted jurisdiction because the complaint did not challenge an unreviewable individual determination, but rather challenged the manner in which the INS was implementing the program. The district court found that the INS practices violated the Immigration Reform and Control Act (Reform Act) and were unconstitutional, and the court of appeals affirmed. Id. at 489, 111 S.Ct. at 894. The INS petitioned the Supreme Court to review whether the Reform Act precluded judicial review or whether the district court had jurisdiction over an action alleging a practice of due process violations by the INS in its administration of the SAW amnesty program. The Court held that the Reform Act precluded judicial review of individual denials of SAW status, not general collateral challenges to unconstitutional practices, and affirmed the district court's and the court of appeals' exercise of jurisdiction. Id. at 492, 111 S.Ct. at 896. The Court explained that the individual respondents "do not seek a substantive declaration that they are entitled to SAW status.... Rather, if allowed to prevail in this action, respondents would only be entitled to have their case files reopened and their applications reconsidered in light of the newly prescribed INS procedures." Id. at 495, 111 S.Ct. at 898.
 
 
 34
 Here, Island similarly claims that it is challenging an agency "practice" (the wage correction process), not the "determination" (denial of reclassification). However, Island asks this court to "direct the trial court to enter summary judgment in Island's favor, and instruct the trial court to order that the MGCRB decision be set aside, the MGCRB reclassify Island, and HCFA award Island its appropriate share of Medicare reimbursement for FFY 1994." Insofar as Island's challenge could have been interpreted as a request for injunctive or declaratory relief regarding HCFA's regulations or procedures, the challenge is moot. HCFA no longer employs the 1988 wage survey data or the process previously used to correct that survey. Wage data are now drawn from the hospital's annual cost reports. If the challenge was not moot, it would be the type of challenge that is appropriate under Bowen.
 
 
 35
 Unlike the amnesty program's application process in McNary, the statutory scheme for reclassification presents a unique "budget neutrality" requirement, which makes the preclusion of judicial review essential. Although Island focuses on an intermediate process and the fringe benefit determinations, what Island really wants is for the court to overturn the final reclassification decision. Such judicial action is not permissible under the Medicare statutory scheme. Budget neutrality can only be maintained if the Secretary's reclassification decisions are not subject to later change or modification. Consequently, insofar as an intermediate decision directly impacts the reclassification decision, it too cannot be subject to change after the reclassification decision becomes final because such change would alter the aggregate impact of the Secretary's reclassification decisions.
 
 
 36
 Accordingly, if a procedure is challenged only in order to reverse the individual reclassification decision, judicial review is not permitted. The qualification is important: HCFA's wage correction procedure and the allowable expense determinations are not unreviewable for all purposes, but only in relation to the reclassification decision. They would be reviewable in reference to other agency determinations. For example, if Island had pursued an appeal to the Reimbursement Board to review the wage correction determination by HCFA in terms of its effect on the wage index and Medicare reimbursements, judicial review of the Reimbursement Board's determinations would have been appropriate. See 42 U.S.C. § 1395oo(f)(1). Or, if the appeal related to review of the wage correction process guidelines for potential declaratory or injunctive relief as in Bowen, this court would have had subject matter jurisdiction.
 
 
 37
 A related district court opinion illustrates the distinction between precluded judicial review of final reclassification decisions, such as that sought here, and judicial review of "methods" and other collateral issues. In Universal Health Servs. of McAllen, Inc. v. Sullivan, 770 F.Supp. 704 (D.D.C.1991), aff'd, 978 F.2d 745 (D.C.Cir.1992), the court found that judicial review of the 35 mile proximity requirement for reclassification was not precluded, stating "the Medicare Act's preclusion of review of the Board's and Secretary's reclassification decisions does not preclude judicial inquiry into the validity of the Secretary's guidelines." Id. at 712. The hospital did not seek an outright reversal of a past reclassification decision or monetary damages. In discussing the appropriateness of judicial review, the court specifically noted that "UHS' challenges to the validity of the guidelines will not interfere with individual reclassification decisions, the reclassification timetable created by the Act, or the Secretary's duty to ensure budget neutrality in each fiscal year." Id. at 714-15. Ultimately, the court upheld the proximity requirement, finding it compatible with congressional intent. Id. at 719. In doing so, the court emphasized the importance of deference to the Secretary's discretion because of the budget neutrality requirement. Id. at 716-18.
 
 
 38
 Although Island argues extensively against the wage correction process underlying the reclassification decision, the relief it seeks on appeal is not declaratory or injunctive relief against the process itself. Therefore, the Bowen and Universal decisions permitting judicial review do not apply. Instead, because Island seeks review of the wage correction process only to achieve reversal of the reclassification decision, the Medicare statutory scheme explicitly precludes judicial review. Therefore, we affirm the district court's dismissal based on lack of subject matter jurisdiction.
 
 CONCLUSION
 
 39
 We vacate the district court's remand to the Reimbursement Board and affirm the district court's dismissal of Island's claims related to the invalidity of the wage correction process employed by HCFA.
 
 
 40
 Vacated in part, affirmed in part.
 
 
 
 [1]
 The Secretary describes the wage data correction process as follows:
 -A hospital that wishes to make a correction to its reported 1988 calendar year wage data must submit to its fiscal intermediary a revised wage survey form ... along with supporting documentation by no later than September 30, 1992.
 -Within 30 days, the fiscal intermediary will review the data and adjust it as appropriate. Upon completion of its review, the fiscal intermediary will forward the hospital's request to HCFA's Division of Hospital Payment Policy, along with a letter that summarizes the hospital's request and makes a recommendation concerning the appropriateness of the requested wage correction.
 -HCFA will review the request and, if HCFA determines that a wage correction is warranted, the wage index value for the area in which the hospital is located will be revised on a prospective basis.
 -In cases where the hospital submitted supporting documentation but additional information is required by the fiscal intermediary or HCFA, the hospital must submit the required information within 30 days of receiving the request.
 
 
 [57]
 Fed.Reg. 39,746, 39,766 (Sept. 1, 1992)
 
 
 [2]
 The district court judge acknowledged the unusual nature of her order, stating: "The Court's disposition of this case is complicated by the fact that plaintiff does not seek remand, but remand is the only course open to the Court short of outright dismissal."