In the Matter of Joe Scotty **FIELDS**, an individual, and an owner of the Miss Ann, a 1971 Inca Cabin Cruiser, Tennessee Registration Number 8523AL.

No. 3:96–0534.

United States District Court,
M.D. Tennessee,
Nashville Division.

March 26, 1997.

Thomas H. Dundon, Leesa A. Hinson, Neal & Harwell, Nashville, TN, for Joe Scotty Fields.

John Edger Acuff, Barnes & Acuff, Cookeville, TN, for James Welch, Southern Heritage Ins. Co.

Jay R. Slobey, Blackburn, Slobey, Freeman & Happell, Nashville, TN, for Barry L. Guest.

Cynthia D. Plymire, Ortale, Kelley, Herbert & Crawford, Nashville, TN, for Sammy Finney, III, Wade Putnam, Ernest G. Burgess.

Allan B. Thorp, Thorp & Fones, Memphis, TN, for David L. Coleman, Lora Coleman.

Christopher K. Thompson, Murfreesboro, TN, for Allied Group.

Roger Wilson Hudson, Darrell L. Scarlett, Murfree, Cope & Moore, Murfreesboro, TN, for Emmett R. Ferrell, Nancy B. Ferrell, Fredlin H. Chapman.

Raymond Dale Bay, Lisa L. Ramsey, Lewis, King, Krieg & Waldrop, Nashville, TN, Jim H. Camp, Sparta, TN, for Cincinnati Ins. Co.

Jade A. Rogers, Wheeler, Adair & Schuerman, Goodlettsville, TN, for Tennessee Farmers Mut. Ins. Co.

David P. Canas, Stewart, Estes & Donnell, Nashville, TN, for American Underwriting Managers.

### *MEMORANDUM:*

NIXON, Chief Judge.

Pending before the Court are numerous Summary Judgment Motions and Motions to Dismiss filed by Movants in the above-captioned matter. Movants contend that Fields' action should be dismissed in that this Court lacks subject matter jurisdiction in this action. In accordance with the reasoning articulated below, the Court hereby grants Movants' Summary Judgment Motions and Motions to Dismiss on subject matter jurisdiction grounds, and dismisses the case.

## I. BACKGROUND:

To assert jurisdiction in this Court, Petitioner Scotty Fields brings this case as an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. Fields owned the Miss Ann, a 1971 Cabin Cruiser which was moored upon Center Hill Lake, which Plaintiff contends is a navigable waterway within this Court's jurisdiction. Fields maintains that at all times he used due diligence to insure that the vessel was seaworthy. The Miss Ann was moored at Edgar Evins Marina on October 29, 1995, when Fields requested that HMR Marine Services ("HMR") treat the boat's engine and fuel in preparation for the winter months. At the time Fields engaged HMR, Fields contends that the boat was in seaworthy condition, although it did have a leak in its right front gas tank. Fields in-

formed the HMR owner and mechanic of the leak and instructed Rogers not to fill that particular tank. Between October 29 and October 31, HMR employees serviced the boat.

On the evening of October 31, Fields was contacted by a friend from the Marina and informed that Fields' boat's bilge pump was pumping gasoline into the water at the marina. Fields drove to the marina and discovered that not only was gasoline disbursed in the water around Fields and other boats, it was also in the hull of Fields' boat. It appeared to Fields that a tank on the left of the boat was leaking. Fields maintains that the left-side tanks were in good condition when Fields turned the boat over to HMR.

As Fields and another friend attempted to remove the gasoline from Fields' boat with a shop-vac, an explosion occurred and ignited Fields' boat. Fifteen boats were burned (including the Miss Ann), as well as a dock house. The Miss Ann, as well as another boat belonging to Fields were burned, and are considered a total loss.

Fields contends that the damages were caused by HMR, without Fields knowledge or privity and that Fields, pursuant to 46 U.S.C.App. § 181, et seq., the Ship Owner's Limitation of Liability Act, is entitled to be exonerated from all liability from the incident or, in the alternative to limit his liability to the post-accident value of his boat pursuant to 46 U.S.C.App. § 181 et seq.

A group of fifteen movants and claimants, comprised of the owners of boats which were damaged in the fire and various insurers, oppose Fields' theory. This group, hereinafter "Movants," contend that this action cannot be brought pursuant to 28 U.S.C. § 1331—federal question jurisdiction. They argue that neither the Supreme Court nor the federal circuit courts have declared that a complaint brought under the Limitation of Liability Act automatically confers federal question jurisdiction. *See, e.g. Three Buoys Houseboat Vacations U.S.A., Ltd. v. Morts*, 921 F.2d 775, 779–780 (8th Cir.1990), *cert. denied*, 502 U.S. 898, 112 S.Ct. 272, 116 L.Ed.2d 224 (1991) (holding that the Limitation of Liability Act does not create independent jurisdiction pursuant to 28 U.S.C.

§ 1331). Movants note that five additional federal appellate courts that have ruled on this issue have also held to this view. *See, e.g. Seven Resorts, Inc. v. Cantlen*, 57 F.3d 771, 773 (9th Cir.1995).

Additionally, Movants argue that the Court does not have jurisdiction pursuant to 28 U.S.C. § 1333, Admiralty Jurisdiction, because Center Hill Lake is nonnavigable for admiralty jurisdiction purposes. Movants note that according to the U.S. Supreme Court, a party seeking to invoke admiralty jurisdiction and seeking protection of the Limitation of Vessel Owner's Liability Act must satisfy conditions of both location and connection with maritime activity. *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 532–34, 115 S.Ct. 1043, 1048, 130 L.Ed.2d 1024 (1995). They argue that in applying the location test, a court must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water. 46 U.S.C.App. § 740.

Movants contend that in applying the connection test, a court first must assess the "general features of the type of incident involved" to determine if the incident has "a potentially disruptive impact" on maritime commerce. *Sisson v. Ruby*, 497 U.S. 358, 363–64, n. 2, 110 S.Ct. 2892, 2897 n. 2, 111 L.Ed.2d 292 (1990).

In applying the navigation test, the Supreme Court has identified four separate contexts in which "navigable waters" are defined:

(1) "Navigable waters" as used to define the scope of Congressional regulatory authority under the Interstate Commerce Clause.

(2) "Navigable waters" as used to determine the Corps of Engineers' legitimate authority under the Rivers and Harbors Appropriation Act. In this context, "navigable waters" are defined as "subject to the ebb and flow of the tide and/or presently used, or used in the past, or susceptible for use in interstate or foreign commerce."

(3) "Navigable waters" as used to establish the limits of admiralty jurisdiction conferred by Article III, § 2 of the Constitution.

(4) "Navigable waters" as used for navigational servitude purposes.

The third definition, Movants contend, is the appropriate test in the case at bar. However, Movants maintain that Center Hill Lake does not constitute a navigable waterway under any of these definitions. Additionally, they argue that under the Sixth Circuit's test, Center Hill Lake is nonnavigable. The test the Sixth Circuit employs, as derived from *The Daniel Ball*, 10 Wall. 557, 77 U.S. 557, 557, 19 L.Ed. 999 (1870) states that:

> Those rivers must be regarded as public navigable rivers in law which are navigable in fact. Rivers are navigable in fact when they are used, or are susceptible of being used, in their ordinary condition, as highways of commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water. And they constitute navigable waters of the United States ... when they form in their ordinary condition by themselves, or by uniting with other waters, a continued highway over which commerce is or may be carried on with other States of foreign countries in the customary mode in which such commerce is conducted by water.

Movants state that Fields' boat was moored on Center Hill Lake, which was created in 1948 with the construction of the Center Hill Dam. Vessels cannot travel on the Lake beyond the dam, as there is not a lock allowing access to the Caney Fork or the Cumberland. Neither commercial transport of goods nor commercial fishing exists on the lake, and the lake is an inland body of water with boundaries within the state of Tennessee. Thus, Movants contend that Fields' boat was not moored on navigable water when the accident took place and therefore, this case does not fall within this court's jurisdiction.

Petitioner responds by arguing that whether Center Hill Lake is a navigable waterway is not dispositive of the Court's jurisdiction over the action. According to Petitioner,

federal district courts have original jurisdiction over "any civil case of admiralty or maritime jurisdiction." 28 U.S.C. § 1333(1) (1982). Petitioner notes that the criteria for determining whether admiralty jurisdiction exists in a given case depends on the type of claim presented.

Petitioner argues that while admiralty jurisdiction over tort is typically determined by reference to the location of the offending action, admiralty jurisdiction over a claim arising from or involving the performance of a contract is determined by reference to the nature and subject of the contract (i.e. the contract must be a "maritime contract." *See, e.g., Fireman's Fund Am. Ins. Co. v. Boston Harbor Marina, Inc.*, 406 F.2d 917, 919 (1st Cir.1969); *Ziegler v. Rieff*, 637 F.Supp. 675, 677 (S.D.N.Y.1986); *The Jack-O-Lantern*, 258 U.S. 96, 99, 42 S.Ct. 243, 243–44, 66 L.Ed. 482 (1922); *Southwest Marine of San Francisco, Inc. v. United States*, 896 F.2d 532, 533–34 (Fed.Cir.1990)).

Petitioner contends that most importantly, a suit involving or arising from a contract to service, repair or store a boat falls within admiralty jurisdiction whether the suit is brought on a theory of breach of contract or in tort, e.g. on a theory of negligent performance of the contract. *Todd Shipyards Corp. v. Turbine Serv., Inc.*, 674 F.2d 401, 412 (5th Cir.1982), *cert. denied*, 459 U.S. 1036, 103 S.Ct. 447, 448, 74 L.Ed.2d 602, 603 (1982); *Alcoa S.S. Co. v. Charles Ferran & Co.*, 383 F.2d 46, 49–50 (5th Cir.1967), *cert. denied*, 393 U.S. 836, 89 S.Ct. 111, 21 L.Ed.2d 107 (1968).

Petitioner contends that the central issue in the case concerns the apportionment of fault for the fire between HMR and Fields. The facts crucial to the complaint arise out of the inadequate performance of an oral contract by HMR to prepare Fields' boat for the winter and the resulting bailment of the boat. These issues involve intertwined theories of contract, bailment, and negligence, according to Petitioner. Pursuant to the holdings in the above cases, the Court has admiralty jurisdiction over the action.

Alternatively, Petitioner argues that if the Court were to hold that it does not have

admiralty jurisdiction over any tort claim presented herein, the Court may and should exercise ancillary jurisdiction over those claims that arise out of the "same nucleus of operative facts" as the contract claim. *See Complaint of Lady Jane*, 818 F.Supp. 1470, 1473–74 (M.D.Fla.1992); *Ziegler v. Rieff*, 637 F.Supp. 675, 677 (S.D.N.Y.1986).

Movants David and Lora Coleman ("the Colemans") argue that Petitioner's response fails to address a key prerequisite for establishing admiralty jurisdiction over Movants' tort claims. According to the Colemans, in order to assert admiralty jurisdiction, Petitioner must establish *both* that (1) the tort occurred in navigable waters and (2) that the tort bears a significant relationship to traditional maritime activity. Movants indicate that Petitioner's responsive argument focuses only on whether there was maritime activity, via a contract for "winterization" of the boat, and neglects the question of whether the accident arising out of HMR's alleged failure to fulfill it's contract occurred in navigable waters.

The Colemans argue that in order to establish admiralty jurisdiction in a tort case, two factors must be present: first, the wrong must occur on navigable waters, and second, the tort must be connected to traditional maritime activity. *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 671–72, 102 S.Ct. 2654, 2656–57, 73 L.Ed.2d 300, (1982), *reh'g denied*, 459 U.S. 899, 103 S.Ct. 198, 74 L.Ed.2d 160 (1982) and *Executive Jet Aviation v. City of Cleveland, Ohio*, 409 U.S. 249, 261, 93 S.Ct. 493, 501, 34 L.Ed.2d 454 (1972). The Colemans contend that an alleged tort does not bear a substantial relationship with traditional maritime activities when a pleasure boat lacking a connection with navigable waters or maritime commerce is the site of an accident and injuries result. *Smith v. Knowles*, 642 F.Supp. 1137, 1140 (D.Md.1986) and *Montgomery v. Harrold*, 473 F.Supp. 61, 64 (E.D.Mich.1979).

The Colemans thus contest Fields' argument that a contract between Fields and HMR for winterizing Fields' boat enables Fields to assert the Limitation of Liability Act against those who have tort claims against Fields. According to the Colemans,

Fields is not seeking to limit his liability from a contract claim of HMR. Instead, Fields is seeking to limit tort claims by parties who had no contractual relationship with Fields. The Colemans argue that the cases cited by Fields do not support his position, since the law is well settled that to gain the benefit of the Limitation of Liability Act, the incident must have occurred on navigable waters, and this incident did not.

## II. DISCUSSION:

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In ascertaining whether summary judgment is proper, the Court views the facts and any reasonable inferences drawn from those facts in a light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). However, on its own, the existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–49, 106 S.Ct. 2505, 2509–11, 91 L.Ed.2d 202 (1986)(internal citations omitted).

In construing the evidence in its most favorable light in favor of Petitioner and against the Movants, as required under *Bohn Aluminum & Brass Corp.*, 303 F.2d at 427, the Court finds that there does not exist a genuine issue of material fact with respect to the question of jurisdiction in this matter. Thus, after a careful review of the record, the Court, in this instance, believes summary judgment to be appropriate.

Under 28 U.S.C. § 1333, the district courts have jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction." This Court finds that the case at bar falls outside its subject matter jurisdiction. Affidavits and other evidence cited above establishes to this Court's satisfaction that Center Hill Lake, the site of all the relevant occurrences, is a lake located entirely within the State of

Tennessee which does not support commercial traffic or fishing and does not constitute a "navigable waterway" as defined by federal admiralty statutes and caselaw. *See, e.g. The Daniel Ball,* 77 U.S. at 557. If this action were solely before the Court as a tort claim, the Court could easily dismiss the matter, relying upon extensive caselaw holding that admiralty jurisdiction in tort is determined by whether the incident at issue took place on a "navigable waterway." *See e.g., Executive Jet Aviation,* 409 U.S. at 272, 93 S.Ct. at 506 (holding that an actionable claim must have occurred on navigable waters in order for admiralty jurisdiction to exist).

However, as stated above, Petitioner here asserts that the status of Center Hill Lake as a navigable waterway is irrelevant for purposes of admiralty jurisdiction in this matter. Petitioner argues that this matter is governed by the fact that the fire and explosion arose out of an allegedly negligently performed maritime repair contract between Petitioner and HMR. Thus, Petitioner argues jurisdiction in this instance is controlled by the "maritime" nature of the repair contract, regardless of the locality of its performance. *Citing Fireman's Fund Am. Ins. Co.,* 406 F.2d at 918–19 (holding that admiralty jurisdiction over a contract claim exists if the claim is "maritime" in nature and subject); *The Jack–O–Lantern,* 258 U.S. at 99, 42 S.Ct. at 243–44 (holding that contracts to repair a ship are "maritime" in nature); *Southwest Marine of San Francisco, Inc.,* 896 F.2d at 533–34.

■ Sixth Circuit caselaw in this area is limited, however this Court is persuaded by the Ninth Circuit's approach to this issue. The Ninth Circuit has recently held that even in cases where jurisdiction is invoked via a contract which is traditionally "maritime" in nature, the issue must still retain some "connection" to navigable waters or maritime commerce. *Seven Resorts, Inc. v. Cantlen,* 57 F.3d 771, 774 (9th Cir.1995) (holding that, absent a connection with navigable waters, a charter contract could not support admiralty jurisdiction in a Limitation of Liability Action, despite the traditional "maritime" nature of such contracts). The

following quotation from *Seven Resorts* summarizes the basis for this holding:

Admiralty jurisdiction over maritime contracts ... is merely a subset of admiralty jurisdiction as a whole. The "primary focus of admiralty jurisdiction is unquestionably the protection of maritime commerce." *Foremost,* 457 U.S. at 674, 102 S.Ct. at 2658. "Commerce for the purpose of admiralty jurisdiction means activities related to the business of shipping." *Adams v. Montana Power Co.,* 528 F.2d 437, 439 (9th Cir.1975). As such, admiralty jurisdiction over both tort and contract issues requires a connection to navigable waters. *Kossick v. United Fruit Co.,* 365 U.S. 731, 736, 81 S.Ct. 886, 890, 6 L.Ed.2d 56 (1961) ("The only question is whether the transaction relates to ships and vessels, masters and mariners, as the agents of commerce ...." (quoting I. Benedict, Admiralty, 131)); *People's Ferry Co. of Boston v. Beers,* 20 How. 393, 61 U.S. 393, 401, 15 L.Ed. 961 (1857)("The admiralty jurisdiction, in cases of contract, depends primarily upon the nature of the contract, and is limited to contracts, claims, and services, purely maritime, and touching rights and duties appertaining to commerce and navigation.") *Adams,* 528 F.2d at 439 ("admiralty jurisdiction need and should extend only to those waters traversed or susceptible of being traversed by commercial craft"). *Id.*

■ Applying the reasoning behind this holding affords, in this Court's view, a consistent framework for determining whether admiralty jurisdiction may be asserted in a case involving a traditionally "maritime" contract. Under the Ninth Circuit's holding in *Seven Resorts,* a contract to repair a vessel, since it is traditionally "maritime" in nature, would give rise to admiralty jurisdiction regardless of where the contract were executed, *provided* the vessel in question had some demonstrable connection to navigable waters, commerce, or shipping. Thus, if a commercial shipping vessel were taken out of navigable ocean, river or lake waters for purposes of the repairs at issue, a federal court could retain admiralty jurisdiction over the matter. However, in the present circumstances, the Court finds that since Fields' boat lacks con-

nection with shipping, commerce or navigable waterways, admiralty jurisdiction is lacking, despite the fact that the incident at issue arguably arises out of a contract which is traditionally "maritime" in nature.[1]

■ Additionally, this Court rejects Petitioner's argument that the Limitation of Liability Act, 46 U.S.C.App. § 183 ("the Act") independently confers jurisdiction over this claim. The Supreme Court, in *Sisson v. Ruby* left this issue as an open question. *See Sisson,* 497 U.S. at 359, n. 1., 110 S.Ct. at 2894, n. 1, but many federal appellate courts which have addressed this issue have declined to hold that the Act confers jurisdiction beyond the reach of admiralty jurisdiction. *See David Wright Charter Service of North Carolina, Inc. v. Wright,* 925 F.2d 783, 785 (4th Cir.1991); *Guillory v. Outboard Motor Corp.,* 956 F.2d 114, 115 (5th Cir.1992); *Complaint of Sisson,* 867 F.2d 341, 350 (7th Cir.1989) *rev'd on other grounds,* 497 U.S. 358, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990); *Three Buoys Houseboat Vacations U.S.A. Ltd.,* 921 F.2d at 780; *Lewis Charters, Inc. v. Huckins Yacht Corp.,* 871 F.2d 1046, 1052–54 (11th Cir.1989); *Seven Resorts, Inc.,* 57 F.3d at 773. This Court accepts the reasoning for these holdings articulated in *Seven Resorts,* namely, that there is "little point in limiting maritime jurisdiction on the one hand to incidents substantially related to traditional maritime activities, while freely conferring such jurisdiction on the other hand to incidents utterly unrelated to traditional maritime activities merely because a party wishes to limit his liability under the act."

## III. CONCLUSION

"It should be stressed that the important cases in admiralty are not the borderline cases on jurisdiction; these may exercise a perverse fascination in the occasion they afford for elaborate casuistry, but the main business of the (admiralty) court involves claims for cargo damage, collision, seaman's

injuries and the like—all well and comfortably within the circle, and far from the penumbra." *Executive Jet Aviation, Inc.,* 409 U.S. at 254, 93 S.Ct. at 498, quoting G. Gilmore & C. Black, The Law of Admiralty 24 n. 88 (1957). For all of the preceding reasons, this Court finds that this case falls completely outside of that penumbra identified by the Court in *Executive Jet.* Finding that this Court lacks subject matter jurisdiction over the above-captioned matter, the Court hereby GRANTS Movants' Motions for Summary Judgment and to Dismiss for lack of jurisdiction and DISMISSES the case. An Order consistent with the reasoning set forth above is filed contemporaneously.

Additional pending motions filed by Claimant Farmers Mutual Insurance Company (Motion to File Claim Nunc Pro Tunc, Doc. No. 48) and by Petitioner (Motion to Strike American Underwriting Managers' Answer, Doc. No. 62) are hereby DISMISSED as MOOT.

---

**1.** Movants have questioned whether Petitioner's Limitation of Liability claim in fact arises out of the repair contract, or whether it arises out of allegedly tortious acts by Petitioner. There is an open question whether Petitioner, in removing gasoline from his boat's hull with a "shop vac" created an unforeseen or intervening cause impacting upon HMR's contractual liability for the explosion and fire which Petitioner alleges arose from defective repairs to the Miss Ann. However, the Court need not address this issue, as the above analysis indicates that this Court lacks jurisdiction over the matter regardless of whether it arises out of contract or tort.