189 F.3d 1130 (9th Cir. 1999)
 PROYECTO SAN PABLO; JOHN A.; JOHN F.; JOHN M., individually and on behalf of others similarly situated; JANE T., individually and on behalf of others similarly situated; JOHN G., individually and on behalf of others similarly situated; JANE B., individually and on behalf of others similarly situated; JANE R.; JANE L.; JOHN V.; JOHN H.; JANE F.; JOHN J.; JOHN T.; JOHN L.; JOHN S.,Plaintiffs-Appellants,
v.
IMMIGRATION AND NATURALIZATION SERVICE; DEPARTMENT OF STATE; JANET RENO, Attorney General; DORIS MEISSNER, Commissioner, INS; MARY MULREAN, Director, Legalization Appeals Unit; WARREN CHRISTOPHER, Secretary of State, Defendants-Appellees.
 No. 97-16694
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted October 8, 1998--San Francisco, California
Decided September 3, 1999
 
 [Copyrighted Material Omitted][Copyrighted Material Omitted]
 Robert Pauw, Gibbs Houston Pauw, Seattle, Washington, for the plaintiffs-appellants.
 M. Jocelyn Lopez Wright, Office of Immigration Litigation, United States Department of Justice, Washington, D.C., for the defendants-appellees.
 Appeal from the United States District Court for the District of Arizona; William D. Browning, District Judge, Presiding. D.C. No. CV-89-00456-WDB.
 Before: Procter Hug, Jr., Chief Judge, Betty B. Fletcher and Stephen S. Trott, Circuit Judges.
 B. FLETCHER, Circuit Judge:
 
 
 1
 Plaintiffs, a class of non-citizens whom the Immigration and Naturalization Service (INS) deems are unlawfully present in the United States, appeal the district court's order dismissing for lack of subject matter jurisdiction their complaint against the INS. Plaintiffs contend that the district court erred in concluding that it lacked jurisdiction over their constitutional and statutory challenges to the procedures followed by the INS in administering a legalization program under the Immigration Reform and Control Act of 1986, Pub. L. No. 99-603, 100 Stat. 3359, 8 U.S.C. S 1255a (IRCA). We reverse in part, affirm in part, and remand.
 
 BACKGROUND
 
 2
 I. IRCA and the Legalization Application Process
 
 
 3
 IRCA established a scheme under which certain aliens unlawfully present in the United States can apply to become legal residents. The scheme allows aliens to apply first for lawful temporary resident status, and then, after a one-year wait, for permanent residency. See generally 8 U.S.C. S 1255a. This process is known as "legalization."
 
 
 4
 The general eligibility requirements for legalization are fourfold. Legalization applicants must have: (1) applied for legalization during a twelve month period beginning May 5, 1987; (2) resided unlawfully in the United States continuously since at least January 1, 1982; (3) been physically present in the United States continuously since November 6, 1986; and (4) been otherwise admissible as an immigrant. See 8 U.S.C. SS 1255a(a)(1)-(4). Any alien applying for legalization is required to submit a completed application and fee to an INS office or designated private organization. See 8 U.S.C. S 1255a(c)(1); 8 C.F.R. S 245a.2(e). When applying for legalization, the applicant must include supporting documents establishing certain elements of eligibility, including continuous residence in the United States. After an interview with a legalization officer, the application form, supporting documents, and any notes taken by the legalization officer are forwarded to a Regional Processing Facility (RPF) for adjudication. See generally 8 C.F.R. S 245a.2.
 
 
 5
 The RPF bases its determination on both the application materials and whatever prior file the INS has pertaining to the applicant. The INS does not provide the applicant with a copy of that prior file. If the file indicates that the applicant was deported after January 1, 1982, the RPF denies the application. See 8 U.S.C. S 1255a(g)(2)(B)(i). The INS then sends the applicant a notice stating the reasons for denial, and informing the applicant that he may appeal the denial within thirty days. The notice of denial also informs the applicant that if he chooses to appeal, he may submit additional evidence, a brief, or other written statements in support of his application. See 8 C.F.R. S 103.3(a)(2)(x)(3).
 
 
 6
 The Legalization Appeals Unit (LAU) reviews appeals from RPF denials. This review is based on the administrative record established at the time of the RPF's denial, and on any newly discovered information not previously available. See 8 U.S.C. S 1255a(f)(3)(B). If a legalization applicant wishes to gain access to documents in his prior deportation file for use in his appeal, he must submit a request for information pursuant to the Freedom of Information Act/Privacy Act (FOIA). See generally 8 C.F.R. S 103.21. The procedures for making a FOIA request were published in the federal register, but the INS does not directly notify legalization applicants of those procedures.
 
 
 7
 Judicial review of the LAU's decision is available only in the court of appeals, as part of its review of a separate order of deportation. See 8 U.S.C. 1255a(f)(4)(A). Thus, until the INS initiates deportation proceedings against an alien who unsuccessfully applies for legalization, that alien has no access to substantive judicial review of the LAU's denial.[1] When judicial reviewis available, it is based solely on the administrative record established at the time of the LAU's denial. See id. at (f)(4)(B). Thus, if an applicant submits a FOIA request for his prior deportation file while his LAU appeal is pending but does not receive the file until after the LAU renders its decision, information in the file can play no role in any judicial review of the LAU's decision.
 
 II. The Class
 
 8
 Named Plaintiffs are one organization[2] and fourteen individuals. The district court certified the class as comprising "those aliens who, at an INS legalization office located within the INS Western and Northern Regions of the United States, made application for change of status under the IRCA; to whose application 8 U.S.C. S 1255a(g)(2)(B)(i) was applied; and whose application was denied." Proyecto San Pablo v. INS, 784 F. Supp. 738, 740 (D. Ariz. 1991) (San Pablo I).[3] Thus, individual Plaintiffs are aliens who applied for legalization and were denied on the basis of alleged prior deportations on or after January 1, 1982.
 
 III. Procedural Background
 
 9
 Plaintiffs first filed suit in August, 1989, alleging that the INS interpreted and implemented IRCA in an unlawful manner. Specifically, Plaintiffs alleged that the INS wrongly interpreted its own regulations to mean that any prior departure from the United States by an alien against whom an order of deportation had been issued was "based on an order of deportation," regardless of the actual circumstances of the departure. Plaintiffs also alleged that the INS unlawfully refused to accept their requests to have waived their ineligibilty for legalization.
 
 
 10
 The district court granted partial summary judgment in Plaintiffs' favor, and ordered the INS to make certain substantive changes to its interpretation and administration of IRCA. The INS appealed the district court's ruling. A panel of this Circuit reversed the district court's order for lack of subject matter jurisdiction. Specifically, the panel held that the district court's order constituted substantive review of denials of legalization applications. Such review violated IRCA's exclusive review provisions, which specify that only the court of appeals has jurisdiction to exercise such review, and only when reviewing a subsequent order of deportation. See Pro
 
 
 11
 yecto San Pablo v. INS, 1995 WL 688845, 70 F.3d 1279 (9th Cir. Nov. 20, 1995) (unpublished memorandum disposition) (San Pablo II). The panel then remanded the case for the district court to determine whether Plaintiffs raised any procedural claims. Specifically, the panel directed the district court to clarify the reasons for its original order:
 
 
 12
 If the district court ordered the changes to allow the aliens to present an adequate record for appeal, then the order was within the court's jurisdiction. If the order was issued solely to cause the INS to change its interpretation of 8 U.S.C. S 1255a(g)(2)(B)(i), then the order is invalid.
 
 
 13
 Id. at *4.
 
 
 14
 On remand, Plaintiffs moved for and received leave to file an amended complaint.The amended complaint added some new named Plaintiffs, and focused on the procedural aspects of the original complaint. The INS then moved to dismiss Plaintiffs' amended complaint under Fed. R. Civ. P. 12(b)(1) (lack of subject matter jurisdiction) and 12(b)(6) (failure to state a claim upon which relief can be granted). The district court granted the motion on June 17, 1997, focusing solely on its lack of subject matter jurisdiction.[4] See Proyecto SanPablo v. INS, 4 F. Supp. 2d 881 (D. Ariz. 1997) (San Pablo III). This appeal followed.
 
 DISCUSSION
 
 15
 We review de novo the district court's dismissal for lack of subject matter jurisdiction. See Naranjo-Aguilera v. INS, 30 F.3d 1106, 1109 (9th Cir. 1994).
 
 
 16
 I. District Court Jurisdiction Under IRCA -General Principles
 
 
 17
 Under 8 U.S.C. S 1255a(f)(1) as contained in IRCA, "[t]here shall be no administrative or judicial review of a determination respecting an application for adjustment of status under this section except in accordance with this subsection." Furthermore, "[t]here shall be judicial review of a [denial by the LAU] only in the judicial review of an order of deportation." 8 U.S.C. S 1255a(f)(4)(A). Judicial review of orders of deportation is confined to the courts of appeals. Id. at S 1105a (as in effect before Oct. 1, 1996). Whether this exclusive review scheme precludes district court jurisdiction over Plaintiffs' claims is the gravamen of this appeal.[5]
 
 
 18
 In Reno v. Catholic Social Services, 509 U.S. 43 (1993) (CSS), the Supreme Court held that district court jurisdiction over IRCA-related claims depends on the satisfaction of two conditions. First, the claim must fall outside the express limitations of 8 U.S.C. S 1255a(f)(1) & (4)(A). That is, the claim must not seek review of a "denial" of "an application for adjustment of status." See CSS, 509 U.S. at 55-56. This limitation, however, "applies only to review of denials of individual . . . applications." McNary Haitian Refugee Center, Inc., 498 U.S. 479, 494 (1991). In McNary, for example, undocumented alien farm workers seeking legalization under IRCA's Special Agricultural Worker (SAW) program challenged several of the INS's practices in processing SAW applications. Plaintiffs claimed the INS failed to allow applicants the opportunity to rebut adverse evidence and failed to provide interpreters for non-English speaking applicants. See id. at 487-88. The Court held that the district courts had jurisdiction over such claims, noting that an exclusive review provision identical to the one in this case did not preclude district courts from hearing "general collateral challenges to unconstitutional practices and policies used . . . in processing applications." Id. at 492.[6]
 
 
 19
 Second, the claim must be "ripe for judicial resolution." CSS, 509 U.S. at 57 (quoting Abbott Laboratories v. Gardner, 387 U.S. 136, 140 (1967)). A legalization applicant's challenge to the regulations and procedures implementing IRCA is not ripe until the applicant has taken "the affirmative steps that he could take before the INS blocked his path by applying the regulations to him." Id. at 59. Typically, the LAU "blocks the path" of an applicant when it determinesthat he is ineligible for legalization and denies his administrative appeal. See id. at 60. Thus, in CSS the Court held that prospective legalization applicants who had not yet attempted to file applications could not challenge the INS's interpretations of IRCA in the district court, because their claims were not ripe.
 
 
 20
 The CSS Court also held that even had the prospective applicants filed legalization applications and been denied by the LAU, such denials would not have yielded claims justiciable in district court. The CSS plaintiffs challenged the legality of certain INS regulations interpreting IRCA's substantive eligibility requirements. The Court acknowledged that IRCA itself did not "preclude[ ] district court jurisdiction over an action challenging the legality of a regulation without referring to or relying on the denial of any individual application," CSS, 509 U.S. at 56, but it also held that plaintiffs raising such claims while relying on the denial of their legalization applications to satisfy ripeness would be barred by IRCA's exclusive review provisions, because they would effectively be seeking individual review of the merits of their applications. See id. at 60.
 
 
 21
 Ripeness, however, may be satisfied in other ways. District courts may exercise jurisdiction over "procedural" challenges to INS practices where such challenges "could receive no practical judicial review within the scheme established by [IRCA]." CSS, 509 U.S. at 61. Thus, CSS held that aliens who attempted to apply for legalization but whose applications were summarily rejected before they were even formally filed did have ripe claims. See id. at 61-62 (describing this process as "front-desking"). In such cases, the lack of effective judicial review of the practice at issue -in CSS the refusal to accept legalization applications -itself causes the claim to ripen.
 
 
 22
 We recently observed that CSS and McNary announce "two guiding principles":
 
 
 23
 The first principle is that district court jurisdiction . . . remains for challenges to . . . INS . . . procedures or practices in handling . . . . This jurisdiction exists because the limited review scheme of S 1160(e)(1) would not produce an adequate administrative record to allow for meaningful judicial review of these collateral claims.
 
 
 24
 . . .
 
 
 25
 The second principle is that aliens may challenge INS interpretation or application of IRCA's substantive eligibility criteria only on review of an order of deportation.
 
 
 26
 Ortiz v. Meissner, 179 F.3d 718, 720-23 (9th Cir. Jun. 3, 1999); see also Naranjo-Aguilera v. INS, 30 F.3d 1106, 1112-13 (9th Cir. 1994). Along with the ripeness requirements discussed above, these two principles govern our treatment of this case.
 
 II. Plaintiffs' Claims[7]
 
 27
 1. Inadequate Access to Prior Deportation Files
 
 
 28
 Plaintiffs allege that the INS violates the Constitution and its own regulations by failing to provide legalization applicants with adequate access to their prior deportation files, thus frustrating the development of an administrative record adequate for effective judicial review. Specifically, Plaintiffs allege that the FOIA procedures are insufficiently publicized and are an inadequate means for legalization applicants to obtain their prior deportation files. As a substantive matter, the crucial issue here is whether an applicant has adequate opportunity to review his prior deportation file prior to the LAU's ruling. Becauseany judicial review of an LAU's decision is limited to the materials that were before the LAU, see 8 U.S.C. S 1255a(f)(4)(B), prior deportation files received after the LAU's decision are of no use.[8]
 
 
 29
 The district court found that it lacked subject matter jurisdiction over Plaintiffs' claim by holding that legalization applicants do have "access to the necessary information." San Pablo III, 4 F. Supp. 2d at 885. That is, the district court based its jurisdictional analysis on an examination of the merits: it held it lacked jurisdiction over Plaintiffs' claim that legalization applicants do not have adequate access to their prior deportation files by finding that applicants do in fact have adequate access. This was error. The merits of Plaintiffs' claims have no bearing on whether the district court has subject matter jurisdiction over them. See generally Bell v. Hood, 327 U.S. 678, 682 (1946) ("Jurisdiction . . . is not defeated . . . by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover.").[9]
 
 
 30
 In order to determine jurisdiction, we first ask whether the claim challenges a "procedure or policy that is collateral to an alien's substantive eligibility," for which "the administrative record is insufficient to provide a basis for meaningful judicial review." Ortiz,179 F.3d at 722. Here, Plaintiffs' claim is essentially one of inadequate access and notice. Their alleged injury is their inability to get access to their prior deportation records in a timely fashion. This claim does not seek review of denials of legalization applications, but rather challenges the procedures by which the legalization program is administered. IRCA's exclusive review provisions do not "preclude[ ] district court jurisdiction over an action challenging the legality of a regulation without referring to or relying on the denial of any individual application." CSS, 509 U.S. at 56. Thus, IRCA does not bar district court jurisdiction over this claim.
 
 
 31
 Second, we ask whether Plaintiffs' claim is ripe. In order for ripeness to be satisfied, Plaintiffs must have taken "the affirmative steps that [they] could take before the INS blocked [their] path." CSS, 509 U.S. at 59. Here, Plaintiffs' claim is ripe because they attempted to obtain their prior deportation files while their cases were pending before the LAU, but were hindered by the INS's policy of requiring the filing of a FOIA request, and by the alleged slowness of the FOIA procedure. Thus, the INS's restrictive procedure for accessing documents itself renders Plaintiffs' claim ripe. Cf. Perales v. Reno, 48 F.3d 1305, 1312 (2d Cir. 1995) (INS's alleged failure to provide proper notice of the statutory criteria for legalization rendered challenges to the notice procedure ripe for review).
 
 
 32
 We conclude, therefore, that Plaintiffs' challenge to the procedures for accessing prior deportation files presents a ripe procedural claim over which the district court has subject matter jurisdiction.
 
 
 33
 2. Failure to Provide Notice Of, and Refusal to Accept, IRCA Waiver Applications
 
 
 34
 IRCA provides that the Attorney General may, in individual cases, waive certain grounds of ineligibility for legalization. See 8 U.S.C. S 1255a(d)(2). Regulations promulgated pursuant to IRCA provide that aliens eligible for such waivers "shall be advised of the procedures for applying for a waiver." 8 C.F.R. S 245a.2(k)(2). This waiver is known as an "IRCA waiver." Plaintiffs contend that the INS failed to notify them of the availability of any IRCA waiver to cure their ineligibility for legalization, and refused to accept the waiver applications that some Plaintiffs did file. The INS concedes that it refused to accept such applications. It defends this refusal by arguing that Plaintiffs' applications for IRCA waivers were futile, as they could not cure all the grounds of Plaintiffs' ineligibility for legalization.[10] On appeal, Plaintiffs focus their challenge not on the INS's interpretation of the substantive scope of the IRCA waiver, but on the INS's practice of not accepting IRCA waiver applications and of not informing Plaintiffs of the availability of such waivers.
 
 
 35
 a. Refusal to Accept IRCA Waiver Applications
 
 
 36
 The district court held that it lacked jurisdiction over Plaintiffs' challenge to this practice by reasoning that because Plaintiffs' attempts to submit waiver applications were recorded in their cases' administrative records, those records "adequately reflect their theory of waiver even without the inclusion of the waiver applications." San Pablo III, 4 F. Supp. 2d at 886. This, again, was a ruling on the merits inappropriate to a jurisdictional analysis. The district court's subject matter jurisdiction does not depend on whether Plaintiffs are correct in their contention that the INS's refusal to accept their waiver applications renders the record of their cases inadequate. Rather, the district court has jurisdiction if Plaintiffs' contention -regardless of its substantive merit -is a ripe challenge to a "procedure or policy that is collateral to an alien's substantive eligibility" for legalization. Ortiz, 179 F.3d at 722.
 
 
 37
 Plaintiffs' challenge to the INS's refusal to accept waiver applications is clearly procedural: it challenges the INS's practice of refusing to accept waiver applications from certain people attempting to file them. The INS's refusal results in the waiver application not becoming part of the administrative record on appeal. In contesting this practice, Plaintiffs "do not challenge the INS's interpretation of the substantive eligibility requirements for legalization, nor do they challenge the application of these requirements in any particular case." Ortiz, 179 F.3d at 722. Thus, Plaintiffs' claim does not fall within IRCA's exclusive review provisions.[11]
 
 
 38
 Plaintiffs' claim is ripe in the same way the claims of the front-desked applicants in CSS were ripe. The CSS Court ruled that front-desked applicants' claims became ripe when the applicants were prevented from filing applications. See CSS, 509 U.S. at 63. Here, Plaintiffs' challenge to the INS's waiver practices became ripe when the INS refused to accept their waiver applications. In both instances, the claim became ripe when the INS blocked the applicants' path with its procedures. Thus, Plaintiffs' challenge to the refusal to accept waiver applications ripened with the refusal. The district court has subject matter jurisdiction over this ripe procedural claim.
 
 
 39
 b. Failure to Give Notice of Waiver Availability
 
 
 40
 Plaintiffs also challenge the INS's application of its own regulations specifying who has a right to be notified of the availability of a waiver. See 8 C.F.R.S 245a.2(k)(2).[12] This is not a challenge to the INS's determination that an IRCA waiver cannot cure Plaintiffs' ineligibility for legalization. Rather, Plaintiffs contend that, since the INS acknowledges that Plaintiffs are eligible to receive waivers for their prior deportations, see supra note 10, under the regulations they have a right to notice of its availability.
 
 
 41
 Although this claim does relate to the meaning of a substantive IRCA regulation -namely 8 C.F.R. S 245a.2(k)(2) and the number of "grounds which may be waived" -it is nevertheless outside IRCA's exclusive review scheme because it neither challenges nor refers to the denial of any individual application for legalization. See McNary, 498 U.S. at 494 (IRCA's exclusive review scheme "applies only to review of denials of individual . . . applications."). The claim is procedural to the extent that it challenges the INS's practice of not informing certain legalization applicants of the availability of waivers. This failure to notify is a "procedure or policy that is collateral to an alien's substantive eligibility." Ortiz, 179 F.3d at 722. Because resolution of Plaintiffs' claim need not implicate either their eligibility for waivers or their general eligibility for legalization, IRCA's exclusive review scheme does not apply.
 
 
 42
 Plaintiffs' claim is also ripe, and not because of the denial of any individual application for legalization. The claim that the INS does not adequately notify applicants of the availability of waivers ripened with the INS's refusal to accept Plaintiffs' waiver applications. As in CSS, Plaintiffs here took all the affirmative steps they could before being stopped by INS procedures. See CSS, 509 U.S. at 63. Plaintiffs' claim of inadequate notice ripened when the INS stopped them from proceeding any further with their waiver applications. Accordingly, the district court has jurisdiction over Plaintiffs' challenge to the INS's practice of not informing applicants like them of the availability of a waiver. Cf. Perales, 48 F.3d at 1312 (finding district court jurisdiction over challenge to adequacy of notice provided by INS).
 
 
 43
 c. Interpretation of the Scope of the Waiver
 
 
 44
 Plaintiffs make an additional, more bold claim for district court jurisdiction over the waiver issue. Specifically, Plaintiffs contend that if the district court takes jurisdiction over the challenge to theINS's procedure of refusing to accept waiver applications, it can also take jurisdiction over the INS's interpretation of the waiver's substantive scope. That is, Plaintiffs claim that the district court can review the INS's position that an IRCA waiver cannot cure ineligibility for legalization if the ineligibility is based on a break in continuous residence caused by deportation. In short, Plaintiffs seek substantive review of eligibility criteria.
 
 
 45
 In Ortiz, we made clear that aliens "may challenge INS interpretation or application of IRCA's substantive eligibility criteria only on review of any order of deportation." 179 F.3d at 722; see Naranjo-Aguilera, 30 F.3d at 1113. The INS's interpretation of an IRCA waiver's scope is an interpretation of IRCA's substantive eligibility criteria. Similarly, saying that Plaintiffs are eligible for a waiver curing all bases of their ineligibility for legalization is tantamount to saying that Plaintiffs are eligible for legalization. This the district court cannot do. We hold that the district court is without jurisdiction to review the INS's interpretation of the substantive scope of IRCA waivers. This holding is fully consistent with our holding that the district court does have jurisdiction to hear challenges to the INS's failure to notify Plaintiffs of the availability of IRCA waivers, and its refusal to accept applications for such waivers. The district court can cure flaws in the INS's IRCA-related procedures, but cannot rule on substance.
 
 3. Pretext Denials
 
 46
 Plaintiffs contend that the INS issued "pretext denials" to certain legalization applicants. They contend that the INS sought to deny certain applications because of prior deportations after January 1, 1982, but that it denied them on a pre-textual ground in order to prevent the applicants from qualifying as members of the plaintiff class in this case. Plaintiffs rely specifically on the case of Jane F to make this claim. The INS denied Jane F's legalization application, citing a prior drug-related arrest as the basis for her ineligibility. After the RPF determined that she was ineligible for legalization, the LAU notified her that she had thirty days to submit rebuttal evidence. Twenty-six days after that thirty days had passed, Jane F submitted information showing that the drug related charges against her had previously been dismissed. By that time, the LAU had already denied her appeal.
 
 
 47
 Plaintiffs contend that the INS's use of Jane F's prior drug-related arrest as a basis for ineligibility was pre-textual, and that the INS actually found her ineligible for legalization on the basis of a prior departure from the country after January 1, 1982. Whether IRCA's exclusive review scheme precludes district court review of this claim depends on whether the claim "challenge[s] INS interpretation or application of IRCA's substantive eligibility criteria." Ortiz, 179 F.3d at 722. We find that it does. For our purposes here, arguing that a denial was pre-textual is no different from arguing that it was wrong. Both arguments challenge the validity of the grounds for denial. IRCA's jurisdictional scheme precludes district court review of such claims[13].
 
 
 48
 4. Termination of Lawful Temporary Resident Status
 
 
 49
 Plaintiffs' amended complaint includes a claim that the INS terminated the temporary resident status of certain legalization applicants without affording them adequate access to their prior deportation files, and without notifying them of the availability of IRCA waivers. Thisclaim is essentially the same as the claims discussed in sections II(1) and II(2) above, except here it applies to legalization applicants whose applications were originally approved (and for whom lawful temporary resident status was granted), only to be rejected later on the basis of a prior deportation after January 1, 1982.[14] This factual difference is of no moment for jurisdictional purposes. Thus, we hold this claim to be procedural and ripe for the same reasons outlined in sections II(1) and II(2) above.[15] In so holding, we do not, of course, find that the district court has jurisdiction to determine whether it was appropriate to terminate lawful temporary resident status. That question implicates IRCA's substantive eligibility requirements. Rather, as in sections II(1) and II(2) above, we simply hold that the district court has jurisdiction to determine whether the INS provided inadequate access to prior deportation files and improperly refused to notify applicants of waiver availability before terminating their status as lawful temporary residents.
 
 
 50
 5. Termination of Employment Authorization and Stays of Deportation
 
 
 51
 Plaintiffs contend that the INS wrongfully terminated the employment authorizations and stays of deportation granted to them during the pendency of their appeals. Under 8 U.S.C. S 1255a(e)(2), the Attorney General is to provide a stay of deportation and work authorization to any "alien who presents a prima facie application for adjustment . . . until a final determination on the application has been made." Plaintiffs claim that "final determination" refers to final judicial review of an application for legalization, and that stays of deportation and work authorizations therefore cannot be terminated until after a court reviews a legalization application in the context of an appeal from an order of deportation. In light of our recent decision in Ortiz, we find that the district court has jurisdiction over this claim.
 
 
 52
 Plaintiffs in Ortiz made precisely the same claim, limited to work authorizations. That is, they contended that IRCA "entitles unsuccessful applicants to retain their interim work authorization beyond the conclusion of administrative proceedings on their application and until the completion of judicial review of their deportation order." Ortiz, 179 F.3d at 719. We found that this claim did "not challenge the INS's interpretation of the substantive eligibility requirements for legalization, nor . . . challenge the application of these requirements in any particular case. " Id. at 179 F.3d at 722. In particular, we noted that "the requirements for work authorization and legalization are different":
 
 
 53
 The statute requires only that an alien file a non frivolous or prima facie application to attain a work authorization. To attain legalization, an alien must fulfillall of the substantive requirements of the relevant section. [By originally granting work authorizations,] [p]resumably the INS made a determination that each of these plaintiffs filed either a non frivolous or prima facie application. The subsequent denial of the application does not affect this initial conclusion.
 
 
 54
 Id. Because the requirements for work authorization and legalization are different, and because a challenge to the timing of the discontinuation of work authorization does not involve a challenge to the denial of legalization itself, we held that IRCA does not preclude the district court from exercising jurisdiction. See id.
 
 
 55
 In this case, Plaintiffs' claim regarding work authorization is identical to the claim in Ortiz. Thus, we follow Ortiz and hold that the district court has jurisdiction over the claim. Ortiz also compels the conclusion that the district court has jurisdiction over Plaintiffs' claim regarding stays of deportation. The same IRCA provision governs stays of deportation and work authorizations. See 8 U.S.C. S 1255a(e)(2). In both contexts, Plaintiffs' claim focuses not on their actual eligibility, but on the meaning of "final determination " under the statute. Ortiz holds that the district court retains jurisdiction to address that issue.
 
 
 56
 Ortiz, however, did not stop at jurisdiction. Proceeding to the merits, Ortiz held that "Congress intended that the automatic stay of deportation and the work authorization last only until the final administrative determination on the application." 179 F.3d at 723. Ortiz's construction of S 1255a(e)(2) controls here. Thus, although the district court was wrong to dismiss these claims for lack of jurisdiction, on remand it should enter judgment against Plaintiffs on the merits.
 
 CONCLUSION
 
 57
 The district court erroneously based much of its jurisdictional analysis on examination of the merits of Plaintiffs' claims. Applying the correct jurisdictional standards as articulated by the Supreme Court in McNary and CSS, we REVERSE the dismissal of claims discussed in sections II(1), II(2)(a), II(2)(b), II(4), and II(5) above, and REMAND to the district court for proceedings consistent with this opinion. As to the claims discussed in section II(5), we direct the district court on remand to enter judgment for the INS. We AFFIRM the district court's dismissal of the claims described in sections II(2)(c) and II(3) above.
 
 
 
 Notes:
 
 
 [1]
 IRCA expressly forbids the INS from using the legalization process to lure illegal aliens into its control for the purposes of deportation. In order to encourage aliens to use the IRCA process, a firewall of sorts is erected between IRCA applications and deportation proceedings. See 8 U.S.C. S 1255a(e)(2). The INS must learn about an alien's unlawful presence independently of any legalization application in order to initiate deportation proceedings.
 
 
 [2]
 The organization, Proyecto San Pablo, is a Qualified Designated Entity (QDE). To encourage widespread participation in the legalization program, IRCA permits the INS to designate a number of organizations experienced in assisting aliens as QDEs. See 8 U.S.C. S 1255a(c)(2). QDEs act as intermediaries between aliens and the INS, informing aliens of the requirements for legalization and assisting aliens with legalization applications.
 
 
 [3]
 8 U.S.C. S 1255a(g)(2)(B)(i) provides that "an alien shall not be considered to have resided continuously in the United States, if, during any period for which continuous residence is required, the alien was outside the United States as a result of a departure under an order of deportation." The "period for which continuous residence is required" began on January 1, 1982. See 8 U.S.C. S 1255a(a)(2). Thus, this provision refers to departures under orders of deportation on or after January 1, 1982.
 
 
 [4]
 Because the district court did not address the INS's arguments under Fed. R. Civ. P. 12(b)(6), and because neither party addresses those arguments on appeal, we treat the district court's order as based solely on Fed. R. Civ. P. 12(b)(1).
 
 
 [5]
 In the absence of a specific statutory provision to the contrary, district courts have jurisdiction to review agency action as part of their general federal question jurisdiction, 28 U.S.C. S 1331.
 
 
 [6]
 The exclusive review provision at issue in McNary, 8 U.S.C. S 1160(e)(1), is identical to 8 U.S.C. S 1255a(f)(1), the provision at issue here.
 
 
 [7]
 Plaintiffs listed twelve claims for relief in their amended complaint. The district court named only six claims in its order, although it may have intended to incorporate more than six of Plaintiffs' claims under its six headings. On appeal, Plaintiffs adopt the district court's formulation of the claims and challenge its dismissal of five of them. We therefore address the district court's subject matter jurisdiction over the five claims as defined by the district court.
 
 
 [8]
 Some Plaintiffs, including class representative Jane R, submitted FOIA requests for their prior deportation files in preparation for their appeals to the LAU, but did not receive the files before the LAU denied their appeals. Other Plaintiffs, such as class representative John S, requested that the INS provide copies of their prior deportation files, but did not file formal FOIA requests. The INS did not provide any files requested in this manner.
 
 
 [9]
 The district court's merits analysis was flawed even on its own terms. It apparently accorded considerable significance to the fact that by June, 1997, "all the original named Plaintiffs who filed FOIA requests [had] received copies of their prior deportation files. " San Pablo III, 4 F. Supp. 2d at 885. Assuming this is true, it is irrelevant to Plaintiffs' claim that they were afforded inadequate access to their prior deportation files before the LAU issued its decision. The fact that certain Plaintiffs, whose applications have already been denied by the LAU, now possess their deportation files has no bearing on their claim regarding adequacy of access to files for use in appeals to the LAU. In any case, of course, whether Plaintiffs actually have adequate access to their prior deportation files goes to the merits of their claim, and does not affect our jurisdictional analysis.
 
 
 [10]
 Under the INS's interpretation of the statute, an IRCA waiver cannot cure the ineligibility of applicants who left the country under an order of deportation after January 1, 1982. The INS contends that being deported after January 1, 1982 renders a legalization applicant ineligible for two reasons: the prior deportation itself, and the break in continuous unlawful residence caused by the deportation. Although the INS concedes that Plaintiffs are eligible to receive a waiver of their prior deportation, it claims that the waiver cannot cure the break in continuous residence caused by the deportation.
 
 
 [11]
 The INS contends that Plaintiffs are trying to disguise as procedural a substantive challenge to the INS's interpretation of the IRCA waiver's scope. While it is true that plaintiffs "may not avoid the holding in CSS [subjecting certain claims to IRCA's exclusive review scheme] merely by joining in a class-action challenge to . . . INS`practices'," Naranjo Aguilera, 30 F.3d at 1114, Plaintiffs' challenge to the practice of refusing to accept waiver applications simply does not implicate the INS's interpretation of the IRCA waiver itself. Plaintiffs' claim does not seek review of the INS's denial of their legalization applications.
 This point bears emphasizing. In order to prevail on their claim, Plain-tiffs need not show that they are entitled to IRCA waivers. If this were the gravamen of their claim, IRCA's exclusive review scheme would preclude district court jurisdiction. Rather, to prevail on their claim Plaintiffs must simply show that, regardless of whether they are actually entitled to IRCA waivers, it is improper for the INS to "front-desk" their waiver applications. This claim goes to the adequacy of the administrative record absent Plaintiffs' applications. Whether the administrative record is adequate absent the waiver applications is the question raised by Plaintiffs' claim; it is not appropriately addressed when determining jurisdiction.
 
 
 [12]
 8 C.F.R. S 245a.2(k)(2) provides:
 If an alien is excludable on grounds which may be waived as set forth in this paragraph, he or she shall be advised of the procedures for applying for a waiver of grounds of excludability on Form I-690.
 
 
 [13]
 We do not rely on the district court's rationale for dismissing this claim. The district court dismissed the claim because it found that Jane F was in fact ineligible for legalization for the reason relied on by the INS. See San Pablo III, 4 F. Supp. 2d at 887. This was a finding on the merits inappropriate to an analysis of jurisdiction. We affirm the district court without reaching the merits because we find that the claim is subject to IRCA's exclusive review scheme and is therefore outside the jurisdiction of the district court.
 
 
 [14]
 We reject the INS's argument that this claim is insufficiently pleaded. Plaintiffs specify in paragraph 68 of their amended complaint that this claim challenges the same failure to provide access to deportation files and failure to give notice of, and accept, waivers challenged elsewhere in the complaint. That paragraph also incorporates by reference Plaintiffs' more detailed allegations on those two topics made elsewhere in the complaint. Such allegations give adequate notice to the INS of the nature of the claim, and therefore satisfy the pleading requirements of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 8(a)(2) (requiring a "short and plain statement of the claim showing that the pleader is entitled to relief"); Leatherman v. Tarrant County Narcotics Intelligence and Coord. Unit, 507 U.S. 163, 168 (1993) (describing Rule 8 as establishing a "liberal system of `notice pleading' ").
 
 
 [15]
 The INS also contends that this claim is barred by the six-year statute of limitations. Satisfaction of the statute of limitations is not a jurisdictional prerequisite in suits against the federal government. See Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990); Washington v. Garrett, 10 F.3d 1421, 1437 (9th Cir. 1993) ("federal statutory time limits on suits against the government are not jurisdictional in nature"). Thus, the statute of limitations question is not properly before us.